SCOTT R. COMMERSON (CA Bar No. 227460)
   scottcommerson@dwt.com
SEAN M. SULLIVAN (CA Bar No. 229104)
   seansullivan@dwt.com
KATELYN A. FELICIANO (CA Bar No. 350385)
   katelynfeliciano@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

L. DANIELLE TOALTOAN (NY Bar No. 5074315), *pro hac vice forthcoming*
   danielletoaltoan@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Fax: (212) 489-8340

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON CONTENT SERVICES LLC; APPLE VIDEO PROGRAMMING LLC; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; NETFLIX US, LLC; PARAMOUNT PICTURES CORPORATION; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL CITY STUDIOS LLC; and WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ZACHARY ADAM-LAYNE DEBARR; ILOCKSPORTS LLC; and Does 1-10 d/b/a outerlimitsiptv.com and outerlimitshosting.net, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Assigned to the Hon. <br> Dept.: <br> Action Filed: March 4, 2025 |

COMPLAINT

Plaintiffs assert the following claims for direct and secondary copyright infringement under the Copyright Act (17 U.S.C. § 101 *et seq*.) against Zachary Adam-Layne DeBarr ("DeBarr"); his company, iLockSports LLC ("iLockSports"); and Does 1-10 ("Does") responsible for the infringing streaming service Outer Limits IPTV, operating at the domains outerlimitsiptv.com and outerlimitshosting.net (DeBarr, iLockSports, and Does together, "Defendants"), which together cause irreparable harm to Plaintiffs. Plaintiffs allege the facts set forth below on personal knowledge as to themselves and on information and belief as to others.

## I.    INTRODUCTION

1.    Mass copyright infringement is a worldwide problem that seriously harms Plaintiffs, the U.S. economy, and economies around the globe. Plaintiffs and their affiliates are producers and distributors of filmed entertainment in the theatrical, television, and streaming industries, and they create many of the world's most popular and critically acclaimed movies and television shows. Beyond their inherent artistic and entertainment value, these copyrighted works contribute substantially to the U.S. economy. The American film and television industry alone supports 2.4 million jobs, pays out $186 billion in total wages, and comprises more than 122,000 businesses in all 50 states (92% of which are small businesses employing fewer than ten people).[1]

2.    Online piracy services and their operators pose a serious threat to this creative marketplace. In 2023, there were an estimated 185.6 billion visits to film

---

[1] *The American Motion Picture and Television Industry: Creating Jobs, Trading Around the World*, MOTION PICTURE ASSOCIATION (2023), https://www.motionpictu res.org/wp-content/uploads/2023/01/MPA_US_Economic_Contribution_2021_ Final.pdf.

1

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

and television piracy sites globally.[2] A U.S. Chamber of Commerce report estimates that global online theft of copyrighted movies and television shows cost the U.S. economy at least $29.2 billion in lost revenue each year.[3] That same study estimates that mass copyright infringement has reduced industry jobs by between 230,000 and 560,000 in just one year.[4]

3.    The Motion Picture Association ("MPA") and the Alliance for Creativity and Entertainment ("ACE") have supported Plaintiffs' investigation of this action. The MPA is a trade association that serves as a leading global advocate for the film, television, and streaming industries. Drawing on the MPA's anti-piracy resources, ACE is a global coalition of media and entertainment companies that is committed to protecting creativity and reducing piracy. Together, the MPA and ACE protect creators' intellectual property rights, including by developing public policy, investigating piracy, managing outreach to mass infringers to cease their illegal operations, and supporting civil enforcement actions against mass infringers if they refuse to cease operations.

4.    DeBarr is one such mass infringer. Specifically, DeBarr and those acting in concert with him, including Does, operate an extensive and commercially-scaled internet protocol television ("IPTV") service named Outer Limits IPTV ("Outer Limits" or the "Infringing Service") that offers unauthorized access to live channels and video-on-demand ("VOD") streams of Plaintiffs' copyrighted movies and television shows. DeBarr makes money by selling subscriptions to his

---

[2] *2023 Movie & TV Piracy Trends Worldwide*, ALLIANCE FOR CREATIVITY AND ENTERTAINMENT (January 2025), https://www.alliance4creativity.com/wp-content/uploads/2025/01/WDWK-About-Movie-TV-Global-Pircy-Trends-092724.pdf

[3] DAVID BLACKBURN ET AL., U.S. CHAMBER OF COMMERCE, IMPACTS OF DIGITAL VIDEO PIRACY ON THE U.S. ECONOMY (June 2019), https://www.uschamber.com/assets/documents/Digital_Video_Piracy_June_2019.pdf.

[4] *Id*. at 14.

2

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

Infringing Service directly to the public, but he pays nothing to Plaintiffs for the copyrighted works he exploits.

5.      DeBarr's mass infringement scheme is willful. DeBarr profits from unauthorized exploitation of many of Plaintiffs' most popular movies and television series, including, for example, Universal City Studios Productions LLLP's ("Universal") popular and recent smash hit, *Wicked*, as seen in the below screenshot from his service:



*Figure 1: Universal's* Wicked *illegally streaming on Outer Limits*

6.      DeBarr has an extensive history of illegally profiting from content theft and has engaged in mass infringement for years. In 2017, he was selling illegally modified Fire TV Stick devices that were used to access a vast library of movies and television shows. Two years later, in 2019, he was reselling subscriptions to two illegal streaming services, Nitro TV[5] and Glitch TV, which provided users access to unauthorized content. In or around March 2020, DeBarr began operating and selling subscriptions to his own illegal streaming service, Outer

---

[5] The operators of Nitro TV were held liable for their infringing activities and ordered to pay Plaintiffs statutory damages of $51,600,000 plus interest. *See Columbia Pictures Indust., Inc., et al. v. Alejandro Galindo, et al.*, 2:20-cv-03129-SVW-GJSx (C.D. Cal.), ECF No. 237, Judgment.

3

COMPLAINT

Limits, through which he profits more directly by selling unauthorized access to popular movies, shows, and television channels.

7.      DeBarr provides Outer Limits' subscribers with access to a library of more than 13,000 movie titles and over 3,000 television series, as well as over 4,000 pirated channels, including international content and live sports events. DeBarr's subscribers pay a subscription fee ranging from $20 per month to $200 per year to access this content. This is infringement of Plaintiffs' copyrighted works on a massive scale.

8.      Because DeBarr has knowingly disregarded the obligation to pay for the content he illegally streams—and therefore does not abide by any restrictions on use or pay any fees—he competes on unfair terms. DeBarr has amassed a significant library of content on his service by disregarding ownership rights or exclusive terms that apply. Because he pays nothing to obtain the content he steals, he charges consumers subscription fees well below what consumers would otherwise pay to access the same content through legitimately licensed distribution platforms. This harms Plaintiffs, their legitimate businesses models, and their legitimate distribution partners.

9.      DeBarr knows he has no right to do any of this and that his activities amount to copyright infringement and unfair competition. Yet, he continues to operate Outer Limits with willful disregard for the illegality of his actions. Plaintiffs have tried since as far back as 2020 to get DeBarr to stop infringing without the need for court intervention. While Plaintiffs were attempting to engage with DeBarr, Outer Limits temporarily went offline.  Outer Limits later resumed service despite Plaintiffs' clear notice to DeBarr. Earlier this year, in May 2024, Plaintiffs again tried to resolve this matter with DeBarr directly to avoid further escalation. Plaintiffs made numerous attempts to contact DeBarr in person, over the phone, by email, and through mail delivery. DeBarr has not responded to any of Plaintiffs' communications, thus forcing Plaintiffs to file this lawsuit so they can protect their

4

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

rights and prevent DeBarr's ongoing infringement.

10. DeBarr and the Does' ongoing infringement diverts customers and revenue from Plaintiffs, and usurps Plaintiffs' right to control their copyrighted works and right to determine the terms on which those works are provided to consumers. Without intervention, these harms will only grow as DeBarr and those in concert with him, including Does, expand both their customer bases and their illegal content offerings.

## II.    PLAINTIFFS

11. Plaintiff Amazon Content Services LLC ("Amazon") is a corporation duly organized under the laws of the State of Delaware with its principal place of business in Seattle, Washington. Amazon owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

12. Plaintiff Apple Video Programming LLC ("Apple") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California. Apple owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

13. Plaintiff Columbia Pictures Industries, Inc. ("Columbia") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California. Columbia owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

14. Plaintiff Disney Enterprises, Inc. ("Disney") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Disney owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

15. Plaintiff Netflix US, LLC ("Netflix") is a corporation duly incorporated under the laws Delaware with its principal place of business in Los Angeles, California. Netflix owns and controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

5

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

16. Plaintiff Paramount Pictures Corporation ("Paramount") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California. Paramount owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

17. Plaintiff Universal is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California. Universal owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

18. Plaintiff Universal City Studios LLC (formerly known as Universal City Studios LLLP and Universal City Studios, Inc.) ("UCS") is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California. UCS owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

19. Plaintiff Warner Bros. Entertainment, Inc. ("Warner Bros.") is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California. Warner Bros. owns or controls copyrights or exclusive rights in content that it or its affiliates produce or distribute.

## III.     THE COPYRIGHTED WORKS

20. Exhibit A to this Complaint contains a representative list of Plaintiffs' feature-length motion pictures and television shows, along with their registration numbers, the registered copyright owner(s), and the date of registration, that DeBarr has infringed (the "Copyrighted Works").[6] Plaintiffs have timely obtained Certificates of Copyright Registration for their Copyrighted Works.

## IV.     DEFENDANTS

21. Defendant Zachary Adam-Layne DeBarr is an individual residing in

---

[6] The Copyrighted Works include but are not limited to the representative list of infringed works set forth in Exhibit A. Plaintiffs will supplement this list as appropriate such as, for example, to calculate damages.

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

Murrieta, California. The available evidence shows that DeBarr previously or currently owns and operates an online infringing service branded as Outer Limits. DeBarr uses the following two primary domains to offer Outer Limits: outerlimitshosting.net and outerlimitsiptv.com (together, the "Infringing Domains"). Outer Limits provides access to hundreds of live channels, as well as more than a thousand movie titles and television episodes.

22.     iLockSports LLC is a California limited liability company with its principal place of business at 41949 Zafra Street, Murrieta, California 92562. On information and belief, iLockSports is an alter ego of DeBarr because, among other things, DeBarr uses the company to accept payments for Outer Limits; iLockSports does not respect corporate formalities, resulting in the California Secretary of State issuing penalty and delinquency notices to iLockSports for failure to file a Statement of Information; and the registered address for iLockSports is also DeBarr's home address.

23.     On information and belief, Does 1-10 are individuals or entities responsible for, or doing business as, the Infringing Domains and working in active concert with each other and DeBarr to knowingly and willfully offer for sale the Infringing Service through the Infringing Domains and selling the Infringing Service to residents in the United States, including in this District.

## V.     JURISDICTION & VENUE

24.     This Court has original subject matter jurisdiction over Plaintiffs' federal copyright claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

25.     DeBarr is subject to personal jurisdiction because he resides in Murrieta, California, and he directs his infringement of Plaintiffs' Copyrighted Works from this jurisdiction.

26.     iLockSports is subject to personal jurisdiction because it is incorporated in and has its principal place of business in Murrieta, California. On

7

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

information and belief, iLockSports is owned and controlled by DeBarr.

27.     Defendants are also subject to personal jurisdiction because Defendants know that their unauthorized exploitation of the Copyrighted Works harms Plaintiffs in California, they are entering into contracts with California residents, they are directing the infringing activity from this jurisdiction, and they are directing the illegal revenues obtained from operation of the Infringing Service to this jurisdiction.

28.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## VI.    FACTUAL BACKGROUND

### A.    Plaintiffs and Their Copyrighted Works

29.     Plaintiffs and/or their affiliates produce and distribute a significant portion of the world's most sought-after, critically acclaimed, and award-winning movies and television programs. Plaintiffs' ability to invest in and create new works, as well as to develop innovative ways to deliver content to consumers, depends upon the protection and enforcement of their rights under copyright law.

30.     Plaintiffs own or hold the exclusive U.S. rights to, among other things, reproduce, distribute, and publicly perform (including by means of streaming those works over the internet) the Copyrighted Works.

31.     Numerous legitimate channels exist for Plaintiffs' Copyrighted Works. Plaintiffs, themselves or through their affiliates, authorize the distribution and public performance of the Copyrighted Works in various formats and through multiple distribution channels, including, by way of example: (a) through authorized cable and direct-to-home satellite services (including basic, premium, and "pay-per-view"); (b) through authorized internet VOD services, including Amazon Prime, Disney+, Apple TV+, Google Play, Netflix, Paramount+, Hulu, and Peacock; (c) through authorized internet or over-the-top streaming services, including those offered by Hulu TV, Fubo TV, Sling TV, YouTube TV, and others;

8

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

(d) for private home viewing on DVD, Blu-ray, and UHD discs; (e) for exhibition in theaters; (f) for pay television; and (g) for over-the-air broadcast television.

32.     Plaintiffs have not authorized DeBarr to stream, distribute, publicly perform, or reproduce any of the Copyrighted Works, or to exercise any of Plaintiffs' other exclusive rights under the Copyright Act, 17 U.S.C. § 106.

### B.     DeBarr's Long History of Infringing Activities

33.     Plaintiffs' investigation has uncovered DeBarr's long history of brazen disregard for copyright laws.

34.     In 2017, for example, DeBarr was selling illegally modified Fire TV Stick devices that were used to access unauthorized movies and television shows. DeBarr publicly advertised these devices for the purpose of accessing unauthorized movies and television shows on his personal social media pages and sold them on his domain, itruststream.com.

35.     Beginning no later than 2019, DeBarr sold access to the illicit streaming services Nitro TV and Glitch TV through the domains nitrotv-iptv.com and glitchtv.com. On information and belief, DeBarr participated in an IPTV reseller network in which he received a commission in exchange for promoting and selling subscriptions to Nitro TV, which was operated by another infringer. Both domains are now inactive, and visitors to DeBarr's Nitro TV domain are redirected to his Outer Limits service.

36.     Beginning in or around 2020, DeBarr began selling subscriptions to his own streaming service, Outer Limits, which at the time offered over 5,000 television channels and several hundred VOD titles. DeBarr sold subscriptions to his illegal service on his domain, outerlimitsiptv.com. DeBarr also operated a mirror site at another domain, outerlimitshosting.net, which routed subscribers to a site identical to outerlimitsiptv.com.

37.     In 2020, DeBarr's subscription packages ranged from $20 per month to as high as $200 per year. Receipts for subscription payments made via PayPal

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

showed that the payment recipient was "iTrustStream," an alias DeBarr has used extensively and that corresponds to several of DeBarr's known email and social media accounts.

38.     DeBarr publicly advertised Outer Limits on his YouTube channel iTrustStream[7], which had over 100,000 subscribers in 2020. DeBarr regularly posted video content and engaged with listeners during live-chat discussions on YouTube. Several of the videos uploaded to the iTrustStream YouTube channel from 2020 feature DeBarr promoting Outer Limits.

39.     In June 2020, for example, DeBarr uploaded a video that is still available online[8] of a recorded live chat on YouTube that attracted an active, participating live audience of over 100 people, during which DeBarr fielded questions about Outer Limits, described how Outer Limits' subscribers could submit support tickets, and gave away free subscriptions to Outer Limits. DeBarr told his audience that he liked running Outer Limits' day-to-day operations but needed "more help on backend stuff," including hiring "admins" to provide additional customer service.

40.     In a September 2020 video that is still available on DeBarr's YouTube channel,[9] DeBarr claimed that Outer Limits provided the same access to out-of-market NFL football games as NFL Sunday Ticket, but at a far lower price and with no contract. DeBarr also seemed to imply that Outer Limits was not authorized to distribute this content, saying "we don't know how long it's going to last." As shown in the screenshot on the following page, DeBarr's video description included a link to Outer Limits' website.

---

[7] https://www.youtube.com/@iTrustStream

[8] https://www.youtube.com/watch?v=fMg1-SsssMw&t=5594s

[9] https://www.youtube.com/watch?v=XuZm16FdBFk

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899



*Figure 2: DeBarr promoting Outer Limits through his iTrustStream YouTube account*

41.    DeBarr also maintained a now-defunct Outer Limits YouTube channel, @Outer Limits IPTV, that had over 9,000 subscribers. That channel's contact information listed the email address debarrsdailyvlog@gmail.com, which DeBarr previously used for several of his social media profiles.

**C.    Plaintiffs Attempted to Resolve the Issue Without Court Intervention in 2020, But DeBarr Refused to Cooperate**

42.    In light of the clear evidence linking DeBarr to continuous and repeated infringement, Plaintiffs sent DeBarr a notice letter in September 2020 demanding that he cease operating Outer Limits.

43.    Plaintiffs followed up with DeBarr several times in late 2020 and early 2021, via phone calls and correspondence to his email address, ituststream@gmail.com.

44.    Plaintiffs were unable to reach a resolution with DeBarr. In November 2020, while the parties' discussions were continuing, Outer Limits went temporarily offline.

11

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### D.   DeBarr's Continued Infringement of Plaintiffs' Copyrighted Works

45.   Plaintiffs continued monitoring DeBarr's Infringing Service after it went offline. Plaintiffs discovered that, in or around August 2021, DeBarr resumed operating Outer Limits.

46.   Through the Infringing Domains and Infringing Service, DeBarr and any unnamed co-conspirators violate Plaintiffs' rights in the Copyrighted Works on a massive scale. Combined, the Infringing Domains receive nearly 300,000 visits annually, with an average of almost 30,000 monthly visitors. These figures substantially underestimate the true extent of DeBarr's mass infringement because, as explained further below, DeBarr provides access to his illicit content through third-party media players. DeBarr's subscribers, therefore, only need to visit the Infringing Domains when they first make a purchase or to renew their subscriptions, rather than each time they illegally access the Copyrighted Works.

47.   Outer Limits offers its subscribers more than 4,000 live channels through its IPTV service, as well as more than 13,000 movies and more than 3,000 television series through its VOD service. These massive unlicensed IPTV and VOD libraries provide subscribers with unauthorized access to thousands of Plaintiffs' Copyrighted Works, a small representative sample of which are listed in Exhibit A to this Complaint.

48.   Outer Limits sells subscriptions to users through the Infringing Domains. DeBarr offers customer subscription packages for Outer Limits IPTV at prices ranging from $20 per month to $200 per year—depending on the package and the number of devices selected. Three of DeBarr's subscription packages are reflected in the below screenshot.

COMPLAINT

12

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899



*Figure 3: Three of Outer Limits' subscription packages*

49.    After purchasing a subscription, DeBarr provides his customers with an email containing a username and password, as well as an access link with instructions to download a supported third-party IPTV media player. A redacted screenshot of DeBarr's email to subscribers is depicted below.



*Figure 4: Email explaining how to access Outer Limits*

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

50.     DeBarr's subscribers can select between several third-party IPTV media players that can be downloaded directly to mobile devices, computers, and smart TVs to provide direct access to Outer Limits. The screenshot below depicts the Outer Limits' interface showing supported third-party IPTV players that can be used to stream content.



*Figure 5: Screenshot showing Outer Limits' supported IPTV players*

51.     Once a supported third-party IPTV player has been installed, DeBarr grants customers access to Outer Limits' offerings of live television channels, as well as its vast VOD library of movie titles and television episodes. As depicted below, Outer Limits' subscribers can select between "Live TV," "Movies," and

14

COMPLAINT

Davis Wright Tremaine LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

"Series," and DeBarr also provides a TV guide listing available content.



*Figure 6: Subscribers have access to Outer Limits' Live TV, Movies, and Series libraries*

52.    The "Live TV" section of Outer Limits provides a substantial collection of television channels, totaling more than 4,000 channels from across the globe. These channels include: (1) Disney's Disney Channel, FX, NatGeo, Lifetime, The History Channel, ABC, and ESPN; (2) Paramount's Nickelodeon, Comedy Central, BET, Showtime, and Paramount Network; (3) Universal's NBC, CNBC, Telemundo, USA Network, and Bravo; and (4) Warner Bros' CNN, HBO, TLC, and HGTV. As depicted below, Outer Limits has libraries of channels organized by topics such as "Entertainment," "Family & Kids," and "Sports." In the "Entertainment" tab, DeBarr provides Outer Limits subscribers unauthorized access to a slew of Plaintiffs' channels.



*Figure 7: A screenshot from Outer Limits' library of television channels*

COMPLAINT

15

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

53.    DeBarr's live television channels are streamed contemporaneously with the original source of the telecast. For example, television programs airing on channels such as A&E and BBC News America through an authorized source (e.g., a cable operator or satellite television provider) also appear on Outer Limits, where the channels are streamed in high definition and with little to no delay. This contemporaneous streaming of the television channels enables Outer Limits' subscribers to view new releases and exclusive programming simultaneously with the original telecast.

54.    Outer Limits also offers a substantial number of VOD titles, including over 13,000 movies as well as episodes from over 3,000 television series. The Outer Limits VOD library enables DeBarr to provide subscribers with access to thousands of copyrighted works instantly as if they were available on a legitimate streaming service. In doing so, DeBarr skirts the licensing fees that legitimate streaming services pay to distribute this content.



*Figure 8: Outer Limits' VOD library interface*

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

55. Included among Outer Limits' VOD titles are popular recent releases, including Disney's *Moana 2* and Columbia's *Bad Boys: Ride or Die*.



*Figure 9: Disney's* Moana 2 *streaming on Outer Limits*



*Figure 10: Columbia's* Bad Boys: Ride or Die *streaming on Outer Limits*

56. Outer Limits' VOD library is updated regularly with infringing copies of popular new titles, which helps DeBarr attract and retain subscribers to his illegal service.

17

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### E.    Plaintiffs Again Seek DeBarr's Cooperation

57.    DeBarr was linked to Outer Limits again in 2024 after it was discovered that his company, iLockSports, is referenced in Outer Limits' Terms of Service page.[10] As shown in the below screenshot, the terms state that all transactions will appear on customers' bank statements as "a charge from iLockSports LLC."



*Figure 11: Outer Limits Terms of Service landing page*

58.    DeBarr, in turn, advertises that he is the owner of iLockSports on his personal Instagram account, @zacdebarr.



*Figure 12: DeBarr's Instagram page referencing his relationship to iLockSports*

59.    California entities iLockSports LLC and Zachary DeBarr LLC are registered to what is, on information and belief, DeBarr's home address: 41949

---

[10] https://outerlimitshosting.net/index.php?m=TermsOfService.

COMPLAINT

18

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Zafra Street, Murrieta, California 92562. This same address is featured on iLockSports' homepage at ilocksports.com.

60.    In addition, iLockSports' website lists the email address ilocksports@gmail.com, which is, on information and belief, associated with DeBarr.

61.    In light of the overwhelming evidence that DeBarr continues to operate Outer Limits, Plaintiffs sent another notice letter to DeBarr in May 2024 demanding that he cease operations.

62.    Plaintiffs have made numerous attempts to reach DeBarr, including calling him at multiple phone numbers, emailing him several times, and delivering correspondence to his home address. DeBarr has not responded to any of Plaintiffs' efforts.

63.    DeBarr is liable for the mass-scale infringement described herein. He continues to operate Outer Limits in concert with his unnamed co-conspirators.

## VII.    CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### (*By All Plaintiffs Against All Defendants*)
### Direct Copyright Infringement – 17 U.S.C. § 501

64.    Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63, inclusive.

65.    Under Section 106 of the Copyright Act, Plaintiffs own the exclusive rights, including, among others, to reproduce and publicly perform their Copyrighted Works.

66.    Plaintiffs have not authorized Defendants to exercise any of Plaintiffs' exclusive rights.

67.    Defendants have infringed and continue to infringe Plaintiffs' Copyrighted Works by violating Plaintiffs' exclusive rights to reproduce the

19

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

Copyrighted Works. Without Plaintiffs' authorization, Defendants make copies of Plaintiffs' Copyrighted Works to amass a VOD library that can then be streamed through their Infringing Service. This infringement includes those works contained on the representative list of infringed works attached at Exhibit A.

68. Defendants have infringed and continue to infringe Plaintiffs' Copyrighted Works by violating Plaintiffs' exclusive rights to publicly perform the Copyrighted Works. Without Plaintiffs' authorization, Defendants publicly perform Plaintiffs' Copyrighted Works, including those works contained on the representative list of infringed works attached at Exhibit A, by transmitting performances of the Copyrighted Works over the internet to subscribers of the Infringing Service.

69. Defendants' acts of infringement are willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' Copyrighted Works. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiffs made and distributed, caused to be made and distributed, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of the Infringing Service in the United States, including in this District.

70. Each Defendant either knew, or should have reasonably known, that Plaintiffs' Copyrighted Works were protected by copyright and that their actions infringed on Plaintiffs' copyrights. Each Defendant continues to infringe upon Plaintiffs' rights in and to the various Copyrighted Works.

71. As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

72. Pursuant to 17 U.S.C. § 503 and at their election, Plaintiffs are entitled to an order that Defendants' infringing goods and articles be impounded and destroyed.

20

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

73.     At their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

74.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

75.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502 to prevent or restrain infringement of the copyrights, including enjoining any use or exploitation by Defendants of their Infringing Service.

## SECOND CLAIM FOR RELIEF

### (*By All Plaintiffs Against All Defendants*)

### Contributory Copyright Infringement

76.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63, inclusive.

77.     With respect to all incidents of infringement as to which Defendants claim that third parties, and not Defendants themselves, are directly liable for infringing Plaintiffs' exclusive rights under the Copyright Act, Defendants are knowingly and materially contributing to such infringement.

78.     Defendants have actual knowledge of infringement by third-party subscribers. Defendants systematically offer for sale thousands of live television channels, movies, and television series containing Copyrighted Works that can only be lawfully accessed through a limited number of legitimate services, in specific geographic regions, and in specific content packages. Defendants know that third parties are not authorized to reproduce Plaintiffs' Copyrighted Works and are not

COMPLAINT

21

authorized to publicly perform Copyrighted Works by streaming these channels. Still, Defendants sell access to these streams to their own subscribers. Defendants also facilitate access to the streams through their Infringing Domains, which, as explained above, permit users to purchase subscriptions and download supported third-party IPTV players through which subscribers can then stream content. Defendants know, from among other sources DeBarr's correspondence with Plaintiffs, that their subscribers have no authorization to receive the streams of the Copyrighted Works he provides to those subscribers.

79. Defendants materially contribute to the infringement of the third-party subscribers. Defendants configure and promote the use of the Infringing Service (including both IPTV and VOD content) to connect subscribers to unauthorized streams of Plaintiffs' Copyrighted Works. To the extent any of the Copyrighted Works available through the Infringing Service have been uploaded to the internet through third parties, the third parties behind these unauthorized streams control the facilities and equipment used to copy and stream performances of Plaintiffs' Copyrighted Works. Those third parties directly infringe Plaintiffs' exclusive reproduction and public performance rights by copying, redistributing, and publicly performing the Copyrighted Works without Plaintiffs' authorization. By operating the Infringing Service and supplying the IPTV and VOD content, Defendants facilitate, encourage, and enable the direct infringement of Plaintiffs' Copyrighted Works.

80. Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each Copyrighted Work constitutes a separate and distinct act of infringement.

81. Defendants' knowing and material contribution to the infringement of the Copyrighted Works is willful, intentional, purposeful, and in utter disregard of Plaintiffs' rights.

82. As a direct and proximate result of Defendants' infringement,

22

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

83.     Pursuant to 17 U.S.C. § 503 and at their election, Plaintiffs are entitled to an order that Defendants' infringing goods and articles be impounded and destroyed.

84.     At their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

85.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

86.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502, including enjoining any use or exploitation by Defendants of their Infringing Service.

## THIRD CLAIM FOR RELIEF

### (*By All Plaintiffs Against All Defendants*)
### Inducement of Copyright Infringement

87.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 to 63, inclusive.

88.     To the extent Defendants claim third parties are exercising Plaintiffs' exclusive reproduction and public performance rights under the Copyright Act, Defendants intentionally induce such infringement by supplying and promoting the use of the Infringing Service, which has the singular function of connecting Defendants' customers to unauthorized online sources that copy and stream

COMPLAINT

23

Plaintiffs' Copyrighted Works, and by actively inducing, encouraging, and promoting the use of the Infringing Service for copyright infringement.

89. DeBarr's intention to facilitate and promote the infringement of Plaintiffs' Copyrighted Works is shown by his clear expression through his social media posts that the Infringing Service will provide DeBarr's customers with access to Plaintiffs' Copyrighted Works.

90. Defendants' intentional and knowing inducement of the infringement of each Copyrighted Work constitutes a separate and distinct act of infringement.

91. Defendants' inducement of the infringement of the Copyrighted Works is willful, intentional, purposeful, and in disregard of and with indifference to Plaintiffs' rights. Defendants also know that the conduct by them and the third parties is infringing.

92. Pursuant to 17 U.S.C. § 503 and at their election, Plaintiffs are entitled to an order that Defendants' infringing goods and articles, should any exist, be impounded and destroyed.

93. As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and Defendants' profits in amounts to be proven at trial.

94. Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per infringed work, by virtue of Defendants' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

95. Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

96. As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiffs' rights

24

COMPLAINT

in the Copyrighted Works. Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502, including enjoining any use or exploitation by Defendants of their Infringing Service.

## VIII.   JURY DEMAND

97.   Pursuant to Rule 38(b), Plaintiffs demand a trial by jury on all claims, issues, and damages so triable.

## IX.   REQUEST FOR RELIEF

For the foregoing reasons, Plaintiffs respectfully request judgment against Defendants for the following relief:

1.   For injunctive relief (a) enjoining Defendants and their officers, agents, servants, employees, attorneys, and all persons acting in active concert or participation with them, from publicly performing, reproducing, distributing, or otherwise infringing in any manner (including without limitation by materially contributing to or intentionally inducing the infringement of) any of Plaintiffs' rights under the Copyright Act in any of the Copyrighted Works, other copyright material owned by Plaintiffs, and other works that Defendants add to the Infringing Service in the future, including without limitation by publicly performing or reproducing those Copyrighted Works or other copyright material owned by Plaintiffs, or by distributing any software or providing any service or device that does or facilitates any of the foregoing illegitimate acts; and (b) impounding hardware in Defendants' possession, custody, or control, and any and all documents or other records in Defendants' possession, custody, or control relating to their direct and secondary infringement of the Copyrighted Works and other copyright material owned by Plaintiffs.

2.   For entry of an injunction enjoining the domain name registrars and registries for the Infringing Domains and the domains nitrotv-iptv.com, gitchtv.com, and iTrustStream.com, as well as all others who receive notice of the Court's order, from allowing the Infringing Domains and the domains nitrotv-

COMPLAINT

25

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

iptv.com, glitchtv.com, and iTrustStream.com to be modified, sold, transferred to another owner, or deleted.

3. For entry of an order requiring the domain name registrars and registries for the Infringing Domains, and any additional domain names found to be associated with Defendants' operation of the Infringing Service, including but not limited to the domains nitrotv-iptv.com, glitchtv.com, and iTrustStream.com, to transfer to a registrar to be appointed by Plaintiffs to re-register the domain names in Plaintiffs' names, or the name(s) of their designee(s), and under Plaintiffs' ownership.

4. For entry of an order requiring hosting service providers of websites associated with the Infringing Domains, as well as nitrotv-iptv.com, glitchtv.com, and iTrustStream.com, to suspend any services to such websites and place an administrative lock on the websites to prevent accessing and downloading the websites' content or transferring the websites' content to another domain name or hosting service.

5. For entry of an order requiring that Defendants' infringing goods and articles be impounded and destroyed pursuant to 17 U.S.C. § 503.

6. For Plaintiffs' damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

7. For an accounting, the imposition of a constructive trust, restitution of Defendants' unlawful proceeds from copyright infringement, and damages according to proof.

8. For a declaration that Defendants' activities as alleged herein constitute direct and secondary copyright infringement of Plaintiffs' exclusive rights under copyright in violation of 17 U.S.C. § 106.

9. For prejudgment interest according to law.

10. For Plaintiffs' attorneys' fees and full costs incurred in this action

COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA  90071
(213) 633-6800
Fax: (213) 633-6899

pursuant to 17 U.S.C. § 505.

11. For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

DATED: March 4, 2025

DAVIS WRIGHT TREMAINE LLP
SCOTT R. COMMERSON
SEAN M. SULLIVAN
KATELYN A. FELICIANO
L. DANIELLE TOALTOAN

By: *S/ Scott R. Commerson*
      Scott R. Commerson
      *Attorneys for Plaintiffs*

COMPLAINT

27

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899