SCOTT R. COMMERSON (State Bar No. 227460)
  scottcommerson@dwt.com
SEAN M. SULLIVAN (State Bar No. 229104)
  seansullivan@dwt.com
KATELYN A. FELICIANO (State Bar No. 350385)
  katelynfeliciano@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

L. DANIELLE TOALTOAN (NY Bar No. 5074315), *pro hac vice*
  danielletoaltoan@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Telephone:  (212) 489-8230
Fax:  (212) 489-8340

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON CONTENT SERVICES LLC; APPLE VIDEO PROGRAMMING LLC; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; NETFLIX US, LLC; PARAMOUNT PICTURES CORPORATION; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL CITY STUDIOS LLC; and WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiffs, <br><br> vs. <br><br> ZACHARY ADAM-LAYNE DEBARR; ILOCKSPORTS LLC; and Does 1-10 d/b/a outerlimitsiptv.com and outerlimitshosting.net, <br><br> Defendants. | Case No. **5:25-cv-00685-JLS (DTBx)** <br><br> **PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS** <br><br> Date:      August 8, 2025 <br> Time:      10:30 AM <br> Dept.:     Courtroom 8A <br><br> Assigned to the Hon. Josephine L. Staton <br><br> Action Filed:  March 4, 2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 8, 2025 at 10:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8A of the Honorable Josephine L. Staton, located at 350 West 1st, Los Angeles, California, Plaintiffs Amazon Content Services LLC, Apple Video Programming LLC, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Netflix US, LLC, Paramount Pictures Corporation, Universal City Studios Productions LLLP, Universal City Studios LLC, and Warner Bros. Entertainment Inc. (collectively, "Plaintiffs") will and hereby do move this Court pursuant to Federal Rules of Civil Procedure 55 and 65 for default judgment and entry of a permanent injunction against Defendants Zachary Adam-Layne DeBarr and iLockSports LLC (collectively, "Defendants").

As set forth in the accompanying Declarations and Memorandum of Points and Authorities, Plaintiffs are entitled to entry of default judgment against Defendants. Defendants were properly served with the Complaint, have failed to respond or otherwise defend, and default has been entered against both Defendants. Accordingly, Plaintiffs seek judgment in their favor and against Defendants for the maximum statutory damages for willful infringement of $150,000 per copyrighted work, for a total of $15,000,000, costs, attorneys' fees under L.R. 55-3 of $303,600, and post-judgment interest. In addition, Plaintiffs seek an order permanently enjoining and restraining Defendants, their agents, employees, and all persons acting in concert with them, from infringing or causing others to infringe Plaintiffs' copyrighted works, as more fully set forth in Plaintiffs' concurrently lodged Proposed Order Granting Plaintiffs' Motion for Default Judgment and Permanent Injunction.

This Motion is based upon this Notice, the Memorandum of Points and Authorities, the Declarations of Scott R. Commerson and Bryan Willett and the attachments thereto, and any additional evidence and arguments as may be presented at or before any hearing on this matter.

i

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DATED: July 3, 2025

DAVIS WRIGHT TREMAINE LLP
SCOTT R. COMMERSON
SEAN M. SULLIVAN
L. DANIELLE TOALTOAN (*pro hac vice*)
KATELYN A. FELICIANO

By: ___*/s/ Scott Commerson*___
Scott R. Commerson

Attorneys for Plaintiffs

ii

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................ 2

    A.   DeBarr's History of Infringing Conduct ............................... 2

    B.   Defendants Engaged in Textbook Copyright Infringement ................ 3

III. LEGAL STANDARD ...................................................................... 4

IV.  ARGUMENT ................................................................................... 5

    A.   Plaintiffs Have Satisfied the Procedural Requirements for Default ................................................................... 5

    B.   The *Eitel* Factors Favor Entry of Default Judgment ........................... 6

        1.   Plaintiffs Will Be Prejudiced Without Entry of Default Judgment ................................................................ 6

        2.   Plaintiffs' Claims Are Meritorious and the Complaint Is Sufficiently Pled ................................................... 7

            (a)   Copyright Infringement (Claim 1) ................................ 7

            (b)   Contributory Copyright Infringement (Claim 2) ............. 8

            (c)   Inducement of Copyright Infringement (Claim 3) ........ 10

        3.   The Damages Sought by Plaintiffs Are Consistent With Defendants' Willful and Pervasive Misconduct ...................... 13

        4.   There Is No Possibility of Dispute Regarding Material Facts ................................................................ 14

        5.   There Is No Possibility of Excusable Neglect ........................ 14

        6.   Policy for Deciding Case on the Merits ................................. 15

    C.   Plaintiffs Are Entitled to Their Requested Relief ............................ 15

        1.   Plaintiffs' Request for Statutory Damages for Willful Copyright Infringement Is Reasonable ................................... 16

            (a)   Willfulness .................................................................. 17

            (b)   Number of Registered Works ...................................... 17

            (c)   The Statutory Maximum Is Proportional to the Harm Inflicted by Defendants ..................................... 17

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2.   Attorneys' Fees and Costs........................................................... 19

   (a)   Attorneys' Fees Are Proper ........................................... 19

   (b)   Local Rule 55-3 Provides the Calculation for Fees....... 20

3.   Plaintiffs are Entitled to Post-Judgment Interest .................... 20

4.   Plaintiffs Are Entitled to a Permanent Injunction................... 20

   (a)   The Factors for a Permanent Injunction Are Satisfied...................................................................... 20

   (b)   The Court Should Issue the Relief in the Proposed Order .............................................................................. 22

V.   CONCLUSION................................................................................. 24

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC, Inc. v. Aereo, Inc.*,
134 S. Ct. 2498 (2014) ...................................................................................9

*Amazon Content Servs., LLC v. Kiss Libr.*,
2020 WL 12863507 (W.D. Wash. Aug. 27, 2020) ........................................ 23

*Amazon Content Servs., LLC v. Set Broad., LLC*,
2019 WL 7856766 (C.D. Cal. Nov. 25, 2019) .............................................. 18

*Anbang Grp. Holdings Co. Ltd. v. Zhou*,
2024 WL 1460368 (N.D. Cal. Apr. 4, 2024) ..................................................5

*Canadian Lumber Trade All. v. United States*,
441 F. Supp. 2d 1259 (Ct. Int'l Trade 2006),
*aff'd*, 517 F.3d 1319 (Fed. Cir. 2008) ......................................................... 21

*Chi-Boy Music v. Charlie Club, Inc.*,
930 F.2d 1224 (7th Cir. 1991) ..................................................................... 16

*China Cent. Tele. v. Create New Tech. (HK) Ltd.*,
2015 WL 3649187 (C.D. Cal. June 11, 2015) .............................................. 19

*Columbia Picture Indust. v. Galindo*,
2022 WL 17094713 (C.D. Cal. Nov. 18, 2022) ...................................... *passim*

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ......................................................... 10, 11, 12

*Daimler AG v. A-Z Wheels LLC*,
498 F. Supp. 3d 1282 (S.D. Cal. 2020) ........................................................ 21

*Disney Enters. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................................. 19, 22

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .................................................................. *passim*

*Fornix Holdings LLC v. Unknown Party*,
2023 WL 6295014 (D. Ariz. Sept. 27, 2023) ............................................... 23

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Frank Music Corp. v. MGM Inc.*,
886 F.2d 1545 (9th Cir. 1989) ............................................................... 16

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) .................................................................7

*Gucci Am., Inc. v. Wang Huoqing*,
2011 WL 31191 (N.D. Cal. Jan. 3, 2011), *report & recommendation adopted by* 2011 WL 30972 (N.D. Cal. Jan. 5, 2011) ...................................... 23

*Jackson v. Sturkie*,
255 F. Supp. 2d 1096 (N.D. Cal. 2003) .............................................. 16

*L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) ............................................................... 16

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) ............................................................... 20

*Lava Records, LLC v. Ates*,
Civ. A-05-1314, 2006 WL 1914166 (W.D. La. July 11, 2006) ....................... 21

*Lindy Pen Co. v. Bic Pen Corp.*,
982 F.2d 1400 (9th Cir. 1993) ............................................................. 19

*MGM Studios, Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .............................................................. 11, 12, 21

*Otter Prods., LLC v. Anke Grp. Indus. Ltd.*,
2013 WL 5910882 (D. Nev. Jan. 8, 2013) ........................................... 23

*Peer Int'l. Corp. v. Pausa Records, Inc.*,
909 F.2d 1332 (9th Cir 1990) ............................................................. 18

*PepsiCo, Inc. v. Cal. Sec. Cans*,
238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................... 7, 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .................................................................8

*Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*,
494 F.3d 788 (9th Cir. 2007) .................................................................8

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
219 F.R.D. 494 (C.D. Cal. 2003) ........................................................ 14

vi

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Sas v. Sawabeh Info. Servs. Co.*,
 2012 WL 12886442 (C.D. Cal. Apr. 6, 2012) ...................................................... 23

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,
 194 F. Supp. 2d 995 (N.D. Cal. 2001) .................................................................. 15

*Simple Design Ltd. v. Enerjoy Ltd.*,
 710 F. Supp. 3d 817 (C.D. Cal. 2024) .................................................................. 23

*Star Fabrics, Inc. v. 3Free NYC Inc.*,
 2013 WL 12124095 (C.D. Cal. Dec. 9, 2013) ........................................................6

*TeleVideo Sys., Inc. v. Heidenthal*,
 826 F.2d 915 (9th Cir. 1987) ...................................................................................4

*In re Tuli*,
 172 F.3d 707 (9th Cir. 1999) ...................................................................................4

*United Fabrics Int'l v. C&J Wear, Inc.*,
 630 F.3d 1255 (9th Cir. 2011) .................................................................................7

*Universal City Studios Prods. LLLP v. TickBox TV LLC*,
 2018 WL 1568698 (C.D. Cal. Jan. 30, 2018) ...................................................... 21

*VBConversions LLC v. Gulf Coast Ventures, Inc.*,
 2016 WL 11687660 (C.D. Cal. Aug. 10, 2016) .................................................... 10

*Warner Bros. Entm't, Inc. v. Caridi*,
 346 F. Supp. 2d 1068 (C.D. Cal. 2004) ....................................................... *passim*

*Warner Bros. Entm't, Inc. v. Vega*,
 2012 WL 13008442 (C.D. Cal. Mar. 29, 2012) .................................................... 23

*Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*,
 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ............................................................... 18

*Warner Bros. Entm't Inc. v. Tusa*,
 2021 WL 6104399 (C.D. Cal. Oct. 25, 2021) ............................................... *passim*

*Wells Fargo Bank, N.A. v. Ninesquare Cap. Partners, LLC*,
 2023 WL 8291794 (C.D. Cal. Oct. 6, 2023) ...........................................................6

*Zlozowaer v. Women.com, Inc.*,
 2023 WL 3432249 (C.D. Cal. Mar. 13, 2023) ........................................................8

vii

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

**Statutes**

17 U.S.C.
    § 106 ............................................................................................................7
    § 106(1) ..................................................................................................... 7, 9
    § 106(4) ..................................................................................................... 7, 9
    § 410(c) ........................................................................................................7
    § 501(b) ........................................................................................................5
    § 502(a) ..................................................................................................... 20
    § 504(c)(1)-(2) .......................................................................................... 16
    § 505 ......................................................................................................... 19

28 U.S.C.
    § 1331 ..........................................................................................................5
    § 1338(a) ......................................................................................................5
    § 1961(a) ................................................................................................... 20

**Rules**

Federal Rule of Civil Procedure
    55(b) ............................................................................................................4
    55(b)(2) .......................................................................................................1
    65(d)(2) ..................................................................................................... 22

Local Rule
    54 ............................................................................................................. 19
    55-1 ............................................................................................................5
    55-3 ................................................................................................... 1, 15, 20

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## I.   INTRODUCTION

Plaintiffs Amazon Content Services LLC, Apple Video Programming LLC, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Netflix US, LLC, Paramount Pictures Corporation, Universal City Studios Productions LLLP, Universal City Studios LLC, and Warner Bros. Entertainment Inc. (collectively, "Plaintiffs") ask the Court to enter default judgment against Defendants Zachary Adam-Layne DeBarr ("DeBarr") and his company, iLockSports LLC ("iLockSports") (together with DeBarr, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). DeBarr operated, managed, and directly profited from an unauthorized movie and television streaming service, Outer Limits IPTV ("Outer Limits" or "Infringing Service"), which operated at the domains outerlimitsiptv.com and outerlimitshosting.net (the "Infringing Domains"). DeBarr's company, iLockSports, is an alter ego of DeBarr that he used to accept payments for Outer Limits and to facilitate his infringing activities. Defendants engaged in massive and willful infringement of Plaintiffs' copyrights in their movies and television shows. The Clerk of Court has entered default against the Defendants for their failure to appear or otherwise defend this action. Entry of default judgment and injunctive relief is appropriate against willful infringers such as Defendants who make a strategic decision not to defend their conduct in court.

Plaintiffs have met the requirements for the Court to enter default judgment and award the requested relief. Plaintiffs request that the Court grant this motion and the following relief: maximum statutory damages under the Copyright Act of $150,000 for willful infringement of each of the 100 copyrighted works listed in Exhibit A to the Complaint ("Copyrighted Works"), totaling $15,000,000; costs; attorneys' fees under L.R. 55-3 for $303,600; post-judgment interest; and entry of a permanent injunction.

1

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

## II.    FACTUAL BACKGROUND

Plaintiffs and their affiliates produce and distribute a significant portion of the world's most sought-after, critically acclaimed, and award-winning movies and television programs. ECF No. 1 ("Compl.") ¶ 29. Plaintiffs are the legal and beneficial owners of the exclusive rights to, among other things, reproduce, distribute, and perform (including by means of streaming their works over the internet) their films, television programs, and other copyrighted works. *Id.* ¶¶ 20, 30. The Motion Picture Association ("MPA") and Alliance for Creativity and Entertainment ("ACE") investigated DeBarr's infringing activities on behalf of Plaintiffs and their affiliates. Declaration of Bryan Willett ("Willett Declaration") ¶¶ 11–15. MPA and ACE's investigation uncovered Defendants' mass infringement scheme. *Id.* ¶ 6.

Defendants' infringement is willful and usurps Plaintiffs' rights to control their copyrighted works and to determine the terms on which those works are provided to customers. Defendants' egregious conduct demonstrates that they will not cease engaging in piracy unless the Court awards substantial damages and issues a permanent injunction.

### A.    DeBarr's History of Infringing Conduct

DeBarr has engaged in willful copyright infringement for years. His conduct began at least as early as 2017 when he sold illegally modified Fire TV Stick devices. Compl. ¶ 6. By 2019, DeBarr was selling subscriptions to two illegal streaming services that provided users with unauthorized access to copyrighted content.[1] *Id.* In or around March 2020, DeBarr began operating his own illegal streaming service, Outer Limits, through which he profited directly by selling

---

[1] The operators of one of those illegal streaming services were held liable for their infringing conduct and ordered to pay statutory damages of $51,600,000 plus interest. *See Columbia Picture Indust. v. Galindo*, 2022 WL 17094713, at *12–14 (C.D. Cal. Nov. 18, 2022).

2

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

unauthorized access to thousands of movies, shows, and television channels, including Plaintiffs' Copyrighted Works. *Id.*

DeBarr promoted Outer Limits on YouTube by highlighting its broad content selection and low subscription prices. Compl. ¶¶ 38–41. He also hosted live video chats on YouTube to engage with potential customers, answer questions about the service, and give away trial subscriptions to Outer Limits. *Id.* ¶ 39.

In September 2020, Plaintiffs sent DeBarr a cease-and-desist letter demanding that he stop infringing Plaintiffs' works. *Id.* ¶ 42. In response, DeBarr temporarily shut down Outer Limits in November 2020. *Id.* ¶ 44. Plaintiffs monitored the service and discovered that, in or around August 2021, DeBarr relaunched Outer Limits and resumed his large-scale infringement. *Id.* ¶ 45.

**B.      Defendants Engaged in Textbook Copyright Infringement**

Outer Limits is blatantly illegal. DeBarr provided his customers with unauthorized access to more than 4,000 television channels over the internet (referred to as internet protocol television ("IPTV") services), and a massive video-on-demand ("VOD") library of over 13,000 movies and 3,000 television shows. *Id.* ¶ 47.

DeBarr profited from his piracy scheme by selling subscriptions through the Infringing Domains at prices ranging from $20 per month to $200 per year. *Id.* ¶ 48. Combined, the Infringing Domains received nearly 300,000 visits annually, an average of almost 30,000 visits each month. *Id.* ¶ 46. These traffic figures, however, likely understate the full scale of infringement, as DeBarr enabled access to Outer Limits' content via third-party media players. *Id.* As a result, customers needed to visit the Infringing Domains only once to purchase a subscription. *Id.* DeBarr concealed his illicit proceeds by funneling payments through his company and alter ego, iLockSports. *Id.* ¶¶ 57–60.

In light of the overwhelming evidence that DeBarr continued to operate Outer Limits despite Plaintiffs' demand in September 2020 that he shut down the service,

3

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

Plaintiffs sent him another cease-and-desist letter in May 2024. Compl. ¶ 61. DeBarr disregarded Plaintiffs' demands and continued his large-scale infringement until Plaintiffs filed this lawsuit in March 2025. Willett Decl. ¶¶ 14–15. DeBarr's history of infringement and his pattern of pausing his infringing activity only to resume it later strongly suggests he is likely to engage in further infringement absent judicial intervention. *Id.* ¶¶ 15, 26.

### III.   LEGAL STANDARD

Granting default judgment is within the Court's discretion. *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004). The Court may enter default judgment following the entry of default by the Clerk of the Court. Fed. R. Civ. P. 55(b)(2). On a default judgment motion, the Court must accept the factual allegations in the operative complaint as true, with the exception of the allegations as to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam). In considering entry of default judgment, the Court must examine its jurisdiction over the subject matter and parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

In the Ninth Circuit, a court may consider the following factors in deciding whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Here, the *Eitel* factors compel the entry of default against Defendants.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# IV.   ARGUMENT

## A.   Plaintiffs Have Satisfied the Procedural Requirements for Default

In compliance with Local Rule 55-1, Plaintiffs' motion for default judgment is supported by the Declaration of Scott Commerson ("Commerson Decl."), which establishes that:

- Plaintiffs initiated this action on March 4, 2025. ECF No. 1; Commerson Decl. ¶ 2.

- On March 8, 2025, Plaintiffs effected personal service on DeBarr. ECF No. 21; Commerson Decl. ¶ 3.

- On March 10, 2025, Plaintiffs effected service on iLockSports through its registered agent. ECF No. 12; Commerson Decl. ¶ 4.

- On April 18, 2025, the Clerk of Court entered default against Defendants for failure to answer or otherwise defend against this litigation. ECF No. 25; Commerson Decl. ¶ 5.

- Although not required, Plaintiffs mailed a copy of their Application for Entry of Default to Defendants. Commerson Decl. ¶ 6. Defendants did not respond. *Id.*

- Defendants are not infants, incompetent persons, or subject to the Servicemembers Civil Relief Act. *Id.* ¶ 8.

- Plaintiffs are mailing the instant Motion and accompanying documents to Defendants. *Id.* ¶ 7.

The Court has subject matter jurisdiction over Plaintiffs' federal copyright claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

The Court has personal jurisdiction over DeBarr and iLockSports. DeBarr is subject to personal jurisdiction because he resides within this district in Murrieta, California. *See Anbang Grp. Holdings Co. Ltd. v. Zhou*, 2024 WL 1460368, at *1 (N.D. Cal. Apr. 4, 2024) (personal jurisdiction existed because defaulting defendant resided in California). iLockSports is subject to personal jurisdiction because it is

5

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

incorporated in and has its principal place of business in Murrieta, California. *See Wells Fargo Bank, N.A. v. Ninesquare Cap. Partners, LLC*, 2023 WL 8291794, at *3 (C.D. Cal. Oct. 6, 2023) ("[f]or corporate entities, the paradigmatic circumstances for general jurisdiction are the state where the corporate entity is incorporated or where its principal place of business is located").

### B.     The *Eitel* Factors Favor Entry of Default Judgment

The *Eitel* factors weigh decisively in favor of entering default judgment. DeBarr owned, operated, and managed the Infringing Service, and willfully infringed Plaintiffs' Copyrighted Works. Without judgment and an injunction, DeBarr is likely to engage in further infringement of Plaintiffs' Copyrighted Works.

#### 1.     Plaintiffs Will Be Prejudiced Without Entry of Default Judgment

As to the first factor, without entry of default judgment Plaintiffs will suffer severe prejudice because they will be unable to recover damages from Defendants or otherwise stop their infringing conduct, and therefore have no remedy. *Warner Bros. Entm't Inc. v. Tusa*, 2021 WL 6104399, at * 3 (C.D. Cal. Oct. 25, 2021) (defendant's "choice not to participate in this litigation or defend his conduct" deprived plaintiffs of remedy); *Star Fabrics, Inc. v. 3Free NYC Inc.*, 2013 WL 12124095, at *2 (C.D. Cal. Dec. 9, 2013) (first factor favors plaintiff where it would otherwise be unable to recover damages from infringer). Defendants infringed Plaintiffs' intellectual property, interfered with Plaintiffs' right to control the distribution of their Copyrighted Works, usurped Plaintiffs' rights to determine the terms on which their Copyrighted Works are provided to consumers, and diverted customers and revenue from legitimate sources. Compl. ¶ 10; Willett Decl. ¶¶ 22–24. DeBarr has known since at least 2020 that his service infringes Plaintiffs' works, yet he continued operating it for years while ignoring Plaintiffs' repeated demands that he stop. Compl. ¶¶ 42–45, 61–62; Willett Decl. ¶¶13–14. Although DeBarr recently took down the Infringing Domains after this action was filed,

6

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

Willett Decl. ¶ 15, DeBarr's persistent "conduct shows that he will not refrain from further infringement absent an injunction," *Tusa*, 2021 WL 6104399, at *3; *see also Caridi*, 346 F. Supp. 2d at 1072 (first factor favors default judgment if risk of continued infringement). The first *Eitel* factor weighs in favor of default judgment.

### 2.   Plaintiffs' Claims Are Meritorious and the Complaint Is Sufficiently Pled

The second and third *Eitel* factors are commonly analyzed together and "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citations omitted). Defendants' default serves as an admission of Plaintiffs' well-pled allegations of fact. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Plaintiffs' detailed, 28-page Complaint establishes Defendants' liability.

### (a)   Copyright Infringement (Claim 1)

To prevail on their claim for copyright infringement, Plaintiffs must demonstrate: (1) their ownership of the allegedly infringed material; and (2) as to that material, that the Defendants "violate[d] at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citation omitted). Among a copyright holder's exclusive rights are "to reproduce the copyrighted work in copies or phonorecords" and "to perform the copyrighted work publicly." 17 U.S.C. § 106(1), (4).

First, Plaintiffs' ownership of their Copyrighted Works is uncontroverted. Plaintiffs have submitted a representative list of Copyrighted Works that were infringed through Outer Limits, ECF No. 1-1 (Ex. A to Compl.), and certificates of registration issued by the Copyright Office for each Work, Commerson Decl. Exs. 1 – 100. These certificates create a presumption of copyright validity and ownership. 17 U.S.C. § 410(c); *United Fabrics Int'l v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Second, Plaintiffs have sufficiently alleged that Defendants are directly liable for infringement of Plaintiffs' copyrights: (1) Plaintiffs examined Outer Limits, including the films and television programs on the service (Compl. ¶¶ 33-45; Willett Decl. ¶¶ 11–12); (2) Plaintiffs determined that Outer Limits provided access to unauthorized reproductions of copyrighted movies or television programs owned by Plaintiffs (Compl. ¶¶ 46, 47, 52–56, Ex. A; Willett Decl. ¶ 12); and (3) Plaintiffs never granted permission to Defendants to reproduce or publicly display their works (Compl. ¶¶ 32, 66–68).

Thus, Plaintiffs have established that Defendants are liable for copyright infringement. *See Zlozowaer v. Women.com, Inc.*, 2023 WL 3432249, at *1, 3 (C.D. Cal. Mar. 13, 2023) (Staton, J.) (granting motion for default judgment on claim of copyright infringement).

### (b)   Contributory Copyright Infringement (Claim 2)

For all theories of secondary liability, including Plaintiffs' claims for contributory copyright infringement (Claim 2) and inducement of copyright infringement (Claim 3), a plaintiff "must establish that there has been direct infringement [of plaintiff's work] by third parties," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007), which, in turn, requires a showing of (1) copyright ownership and (2) violation of an exclusive interest under the Copyright Act. *See A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

For contributory infringement, Plaintiffs must show that Defendants: "(1) [had] knowledge of a third party's infringing activity; and (2) induce[d], cause[d], or materially contribute[d] to the infringing conduct." *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007). In other words, Defendants are liable for contributory infringement where they "kn[ew] or had reason to know" of third parties' infringement and "engage[d] in … conduct that

8

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

encourage[d] or assist[ed]" it. *A&M Records*, 239 F.3d at 1019–20 (internal quotation marks and citation omitted).

***Secondary Liability.*** First, Plaintiffs own valid copyrights for the Copyrighted Works. *See supra* Section IV(b)(2)(a). Second, Plaintiffs have established that third parties directly infringed Plaintiffs' works. These third parties include (1) the third-party subscribers to Defendants' Infringing Service, and (2) any third parties that uploaded the Copyrighted Works to the internet and that control the facilities and equipment used to copy and stream performances of the Copyrighted Works. These third parties infringe Plaintiffs' exclusive rights under Sections 106(1) and (4) to reproduce and publicly perform their Copyrighted Works. Compl. ¶¶ 78–79; *see ABC, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2506 (2014) ("[T]he concep[t] of public performance . . . cover[s] not only the initial rendition or showing, but also any further act by which that rendition or showing is transmitted or communicated to the public.").

***Contributory Copyright Infringement.*** Plaintiffs have proven their claim for contributory copyright infringement. First, Defendants had knowledge of: (1) third-party subscribers' unauthorized public performance of the Copyrighted Works by streaming the infringing content; and (2) to the extent that any of the Copyrighted Works available through Outer Limits were uploaded by third parties, those parties' direct infringement of Plaintiffs' reproduction and public performance rights in their Copyrighted Works. Compl. ¶¶ 78–79. Defendants' knowledge is clear from the following facts: DeBarr advertised Outer Limits' abilities to stream unauthorized works; he provided subscribers with material aid to access those works; he continued to operate the Infringing Service after Plaintiffs put DeBarr on notice that his activities were infringing; and DeBarr used iLockSports as an alter ego to hide the fact that payments for subscriptions to the Infringing Service were being made to DeBarr. *Id.* ¶¶ 38–44, 48–51, 60–62; *Galindo*, 2022 WL 17094713, at *9

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

(knowledge element satisfied when complaint "provide[d] a detailed summary of [defendants] 'actively encouraging infringement'").

Second, Defendants caused or materially contributed to the infringement by: (1) "configur[ing] and promot[ing] the use of the Infringing Service (including both IPTV and VOD content) to connect subscribers to unauthorized streams of Plaintiffs' Copyrighted Works"; and (2) "operating the Infringing Service and supplying IPTV and VOD content," which "facilitate[d], encourage[d], and enable[d] the direct infringement of" any Copyrighted Works that were uploaded, streamed, copied, or reproduced by third parties. Compl. ¶¶ 78–79. Defendants thus made a "material contribution" to infringement by "substantially assist[ing] … a worldwide audience of users to access infringing materials." *Galindo*, 2022 WL 17094713, at *9.

The Complaint's allegations, admitted by default, establish that Defendants are liable for contributory copyright infringement. *See Tusa*, 2021 WL 6104399, at *4 (granting default judgment on contributory copyright infringement claim where defendant sold access to unauthorized streams of copyrighted films and television channels); *VBConversions LLC v. Gulf Coast Ventures, Inc.*, 2016 WL 11687660, at *5 (C.D. Cal. Aug. 10, 2016) (granting default judgment on contributory copyright infringement claim where defendant facilitated infringing conduct by "supplying . . . the equipment necessary to encourage, urge and persuade, and induce the usage of [protected works]").

### (c)    Inducement of Copyright Infringement (Claim 3)

Inducement of copyright infringement has four elements: (1) distribution of a device, product, or service; (2) acts of infringement; (3) an object of promoting use of the device, product, or service to infringe copyright; and (4) causation. *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013). Plaintiffs have proven this claim.

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

First, Defendants "distributed and sold subscriptions to the [Infringing Service], which constitutes 'the distribution of a device or product by the defendant.'" *Tusa*, 2021 WL 6104399, at *5; Compl. ¶¶ 4, 36, 48; *see also Fung*, 710 F.3d at 1033 ("[T]he inducement copyright doctrine . . . applies to services available on the Internet as well as to devices or products."); *Galindo*, 2022 WL 17094713, at *10 (defendants' "streaming [of] the Copyrighted Works through the Platform and [] granting subscribers and the reseller network access to the Platform" satisfied the first two elements of inducement copyright claim).

Second, Defendants created a demand for unauthorized reproduction of Plaintiffs' Copyrighted Works by providing access to Outer Limits on more favorable terms (*e.g.*, lower cost and no contract) than legitimate channels that are authorized to distribute and publicly perform the Copyrighted Works. Compl. ¶¶ 10, 31–32. Defendants thus induced direct infringement. *See Tusa*, 2021 WL 6104399, at *5 (creating a demand for infringing service satisfied second inducement element).

Third, Defendants knowingly and intentionally distributed the Infringing Service "with the object of promoting its use to infringe copyright." *Fung*, 710 F.3d at 1032. Defendants acted with "a clear expression or other affirmative steps taken to foster infringement." *MGM Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005). Specifically, DeBarr "publicly advertised Outer Limits on his YouTube channel" and "gave away free subscriptions to Outer Limits" over "a recorded live chat on YouTube that attracted an active, participating audience of over 100 people." *Id. ¶¶* 38–41. "[T]he classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit [copyright] violations." *Grokster*, 545 U.S. at 916; *Fung*, 710 F.3d at 1036 (advertising of "Box Office Movies" link to invite a user to upload copyrighted material); *Galindo*, 2021 WL 6104399, at *5 ("promotional raffle … in which the top prize was a subscription to" an infringing service satisfied element).

11

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

In *Grokster*, the defendants "communicated a clear message by responding affirmatively to requests for help in locating and playing copyrighted materials." 545 U.S. at 938. Similarly here, Defendants stimulated copyright infringement by third parties by "engag[ing] with listeners during live-chat discussions on YouTube" regarding Outer Limits, "field[ing] questions about Outer Limits," and "provid[ing] customers with an email containing a username and password, as well as an access link with instructions to download a supported third-party IPTV media player" to access the Infringing Service. Compl. ¶¶ 39–40, 49.

Defendants "aim[ed] to satisfy a known source of demand for copyright infringement" by shutting down the Infringing Service after Plaintiffs complained and then relaunching the Infringing Service. *Tusa*, 2021 WL 6104399, at *5 (defendant's "repeated rebranding and relaunching on infringing services" indicated unlawful intent). Taken together, DeBarr's advertisement of, facilitation of access to, and relaunching of the Infringing Service all support Defendants' aim to encourage third-party infringement of Plaintiffs' Copyrighted Works.

Fourth, as to causation, "if one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of the service." *Tusa*, 2021 WL 6104399, at *5 (quoting *Fung*, 710 F.3d at 1037). Defendants distributed and promoted the Infringing Service with the clear intent that subscribers would publicly perform unauthorized copies of Plaintiffs' Copyrighted Works, and "the infringing conduct predictably followed." *See id.* Causation is satisfied.

The Complaint's allegations, admitted by default, establish Defendants' liability for inducement of copyright infringement.

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

### 3.   The Damages Sought by Plaintiffs Are Consistent With Defendants' Willful and Pervasive Misconduct

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Where the harm has the potential to continue and its full magnitude cannot be quantified, this factor also weighs in favor of default judgment. *See Caridi*, 346 F. Supp. 2d at 1072 (factor favored copyright owner when conduct may be continuing and plaintiff sought enhanced damages for willful infringement).

Plaintiffs request the maximum statutory damages of $150,000 for willful infringement of each of the 100 Copyrighted Works listed in Exhibit A to the Complaint—a total of $15,000,000. These sums are entirely in keeping with the gravity and pervasiveness of Defendants' infringing conduct.

Defendants have infringed Plaintiffs' Copyrighted Works on a massive scale by offering access to a vast library of unauthorized content, including over 4,000 live channels, 13,000 movies, and 3,000 television series. Compl. ¶ 47. The Infringing Domains received nearly 300,000 visits annually, or nearly 30,000 monthly visits. *Id.* ¶ 46. But these figures significantly understate the scope of DeBarr's infringement, as Outer Limits subscribers could access the unauthorized content without visiting the Infringing Domains at all. *Id*. Defendants charged between $20 per month and $200 per year for each Outer Limits subscription package. *Id*. ¶ 48. Because they paid nothing for the stolen content, Defendants could undercut legitimate services by offering artificially low prices. *Id*. ¶ 8. The likely thousands of subscriptions Defendants sold were used to view countless hours of Plaintiffs' copyrighted programming. Willett Decl. ¶ 12.

DeBarr exacerbated his wrongful conduct by ignoring Plaintiffs' two cease-and-desist letters. Compl. ¶¶ 42, 61; Willett Decl. ¶¶ 13–14. Rather than ceasing their illegal conduct, Defendants shut down the Infringing Service temporarily in

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2020 after receipt of the first letter, and then quietly resumed selling subscriptions to the Infringing Service. Compl. ¶¶ 42–44, 61; Willett Decl. ¶¶ 13–14. Defendants did not respond at all to Plaintiffs' second letter in 2024. Compl. ¶ 62. In fact, it was only after Defendants were served with notice of this lawsuit that the Infringing Domains were taken down. Willett Decl. ¶ 15. In summary, long after Defendants were placed on notice of their wrongful conduct, Defendants continued to sell and promote the Infringing Service, and continued to infringe Plaintiffs' Copyrighted Works.

While $15,000,000 in damages for copyright infringement ($150,000 for each of the 100 Copyrighted Works) is a substantial sum, it is appropriate given Defendants' brazen distribution of Plaintiffs' Copyrighted Works. The Copyrighted Works are merely a sample of the likely thousands of Plaintiffs' copyrights that Defendants infringed. *See Galindo*, 2022 WL 17094713, at *11 (awarding maximum statutory damages "[g]iven the extent of [defendants'] willful conduct" and where plaintiffs requested damages for only a fraction of the total works likely infringed). For these reasons, the amount of damages requested is commensurate with the scope of Defendants' misconduct.

### 4.  There Is No Possibility of Dispute Regarding Material Facts

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to a material fact. *Eitel*, 782 F.2d at 1471-72. A defendant's failure to respond to a complaint indicates that "the likelihood that any genuine issue may exist is, at best, remote." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, there is no possible dispute concerning the material facts because Defendants have intentionally defaulted, and therefore the factual allegations of the Complaint are taken as true. *See Tusa*, 2021 WL 6104399, at *6.

### 5.  There Is No Possibility of Excusable Neglect

Under the sixth *Eitel* factor, the Court considers whether Defendants' default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, the facts show

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

that Defendants' default was intentional. DeBarr was first put on notice of his infringing conduct in September 2020 and only temporarily shut down the Infringing Service to avoid detection. Compl. ¶¶ 42–44. DeBarr again ignored Plaintiffs' numerous cease-and-desist efforts in May 2024. *Id.* ¶ 61–62. Defendants were properly served with the Summons and Complaint. ECF Nos, 12, 21; Commerson Decl. ¶¶ 3–4. Plaintiffs also mailed Defendants a copy of the Application for Entry of Default and served this Motion on Defendants. Commerson Decl. ¶¶ 6–7. The circumstances demonstrate that Defendants' conduct is intentional and not a result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (defendant's default when properly served with complaint and notice of entry of default not attributable to excusable neglect).

### 6.     Policy for Deciding Case on the Merits

The final *Eitel* factor considers the preference for deciding cases on the merits, *see Eitel*, 782 F.2d at 1471-72, but "this factor, standing alone, cannot suffice to prevent entry of default judgment for otherwise default judgment could never be entered," *Caridi*, 346 F. Supp. 2d at 1073. Here, the only reason this lawsuit cannot proceed to the merits is because Defendants have decided not to defend it.

In sum, the *Eitel* factors support default judgment against Defendants.

### C.     Plaintiffs Are Entitled to Their Requested Relief

Plaintiffs request that the Court enter a default judgment awarding (1) maximum statutory damages for willful infringement of $150,000 per work, for a total of $15,000,000; (2) attorneys' fees pursuant to Local Rule 55-3 of $303,600 and costs; (3) post-judgment interest; and (4) a permanent injunction prohibiting Defendants from engaging in the same or similar conduct going forward and ordering the Infringing Domains to be turned over to Plaintiffs. Commerson Decl. ¶¶ 8–12.

15

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

### 1.    Plaintiffs' Request for Statutory Damages for Willful Copyright Infringement Is Reasonable

The Copyright Act authorizes an award of statutory damages of $750 to $30,000 per infringed work, and enhanced statutory damages of up to $150,000 per infringed work for willful infringement. 17 U.S.C. § 504(c)(1)-(2). Statutory damages are available in copyright infringement suits because actual damages and lost profits "are often virtually impossible to prove." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). "Statutory damages are particularly appropriate in a case . . . in which defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiffs [sic] actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Because awards of statutory damages serve both compensatory and punitive purposes, "a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant" for reasons, among others, of deterring future infringement. *L.A. News Serv. v. Reuters Tele. Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998). District courts have broad discretion in determining the amount of statutory damages to award for copyright infringement. *Jackson*, 255 F. Supp. 2d at 1101.

Here, Plaintiffs request $15,000,000 in statutory damages under the Copyright Act, representing an award of $150,000 for each of the 100 Copyrighted Works. *See* Commerson Decl. ¶ 11; Proposed Order ¶ 2. The requested award serves the most fundamental purposes of statutory damages: compensation, punishment, and deterrence. Although this amount cannot remediate the harm caused by the widespread infringement of Plaintiffs' Copyrighted Works, the magnitude of the award will serve as a deterrent to other wrongdoers. *Frank Music Corp. v. MGM Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989) (courts may award

16

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

enhanced statutory damages both "to provide adequate compensation to the copyright holder and to deter infringement.").

### (a)    Willfulness

Defendants' default mandates a finding of willfulness. *Caridi*, 346 F. Supp. 2d at 1074 ("Because of the entry of default . . . [t]he Court must take [plaintiffs'] allegation of willful infringement as true."). Indeed, the Complaint's well-pled allegations establish Defendants' willfulness: (1) for years, Defendants advertised and marketed the Infringing Service in order to profit from the sale of subscriptions, despite having no license or agreement with Plaintiffs; (2) Defendants owned and operated an extensive and commercially-scaled streaming service that offered unauthorized access to thousands of pirated channels, television programs, and films; (3) Defendants continued operating the Infringing Service for years despite Plaintiffs' cease-and-desist efforts in 2020 and 2024; and (4) Defendants attempted to conceal their mass infringement scheme by hiding payments for the Infringing Service through DeBarr's alter ego, iLockSports. Compl. ¶¶ 36–40, 45–54, 57–61. There is no doubt Defendants willfully infringed Plaintiffs' Copyrighted Works.

### (b)    Number of Registered Works

Plaintiffs have submitted a representative sample of 100 of Plaintiffs' Copyrighted Works that investigators confirmed were illegally streamed on Outer Limits. Compl. Ex. A; Commerson Decl. Exs. 1–100. The Copyrighted Works, however, represent a mere fraction of the copyright infringement perpetuated by Defendants. Willett Decl. ¶ 12. Plaintiffs confirmed that thousands of additional copyrighted works were available for viewing on Outer Limits, and subscribers therefore had the capability to stream an unlimited number of Plaintiffs' copyrighted films and television shows. Compl. ¶¶ 47, 52; Willett Decl. ¶ 12.

### (c)    The Statutory Maximum Is Proportional to the Harm Inflicted by Defendants

There can be no doubt that Defendants' infringement was willful. Courts

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

have awarded the statutory maximum in actions involving similar widespread and flagrant infringement. *See*, *e.g.*, *Amazon Content Servs., LLC v. Set Broad., LLC*, 2019 WL 7856766, at *4 (C.D. Cal. Nov. 25, 2019) (default judgment awarding maximum statutory damages per infringed work for willful infringement); *Caridi*, 346 F. Supp. 2d at 1074 (awarding maximum for each work infringed where defendant ignored warnings of infringement and defaulted); *Galindo*, 2022 WL 17094713, at *12 (awarding $51.6 million, representing maximum for representative list of 344 works); *Peer Int'l. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336-37 (9th Cir 1990) (affirming award of $150,000 maximum award for each of 80 infringed works).

Although the true scope of harm that Defendants inflicted cannot be known, the $15,000,000 award that Plaintiffs seek is proportional to the immense harm Defendants have caused. Here, relying on maximum damages for a representative set of works that is only a "small sliver of the actual number of works infringed upon" is reasonable because "the actual damages in this case would likely be astronomically higher than the measure provided by the maximum statutory damages for the furnished representative works." *Amazon Content Servs.*, 2019 WL 7856766, at *4. Further, Defendants deprived Plaintiffs of their exclusive rights to control how, when, on what terms, and to whom they will disseminate their Copyrighted Works. Willett Decl. ¶ 20; *see Warner Bros. Entm't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1012–13 (C.D. Cal. 2011) (defendants' unauthorized streaming "interfere[s] with Plaintiffs' ability to control the use and transmission of their Copyrighted Works, thereby causing irreparable injury").

Defendants' illegal conduct also undermined the legitimate market for authorized streaming services. In the legitimate market, consumers purchase access to the same Copyrighted Works that DeBarr appropriated to enrich himself. This conduct irreparably harms Plaintiffs, who have invested significantly not only in the underlying content but in the development of a lawful market. Willett Decl. ¶¶ 17–

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

21; *see China Cent. Tele. v. Create New Tech. (HK) Ltd.*, 2015 WL 3649187, at *13 (C.D. Cal. June 11, 2015) (infringing streaming service caused irreparable harm by "interfer[ing] with plaintiffs' ability to develop a lawful market for internet distribution[]"); *Galindo*, 2022 WL 17094713, at *11 ("Plaintiffs' business model, as well as the entertainment industry itself, hinges on copyright owners' ability to control the distribution and use of their copyrighted works.").

Defendants' willful infringement has caused significant damage to Plaintiffs' businesses. *Disney Enters. v. VidAnge, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (unauthorized streaming service "undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees"). The $15,000,000 in statutory damages Plaintiffs request thus represents only a fraction of the actual damages inflicted by Defendants on Plaintiffs.

### 2.    Attorneys' Fees and Costs

Attorneys' fees and costs are recoverable on Plaintiffs' copyright claims under 17 U.S.C. § 505. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993). Plaintiffs will submit an Application to Tax Costs, following entry of judgment pursuant to Local Rule 54.

### (a)    Attorneys' Fees Are Proper

The Ninth Circuit has identified five non-exclusive factors that a court may consider in deciding whether to award attorneys' fees pursuant to § 505: "(1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) objective unreasonableness, and (5) the need to advance considerations of compensation and deterrence[]." *Caridi*, 346 F. Supp. 2d at 1074–75 (awarding fees in a default judgment).

Each of the five factors weigh in favor of a fees award here: (1) Plaintiffs succeeded on the merits; (2 & 3) Plaintiffs' claims are not frivolous or brought for an improper purpose (in fact, Plaintiffs gave Defendants multiple opportunities to

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

resolve this matter before court intervention, Commerson Decl. ¶¶ 13–14);

(4) Defendants' failure to cease the infringing activity is unreasonable; and

(5) DeBarr and other would-be infringers must be deterred.

### (b)   Local Rule 55-3 Provides the Calculation for Fees

Local Rule 55-3 provides that where the amount of judgment is over $100,000, an award of attorneys' fees should be made in the amount of $5,600 plus two percent of the amount over $100,000. L.R. 55-3. As the amount of the requested judgment is $15,000,000, the rule dictates an award of $5,600 plus $298,000, for a total of $303,600. This amount is reasonable in light of the substantial fees incurred by Plaintiffs already (including for their investigation and pre-suit enforcement efforts), as well as the amounts that may be necessary to collect on the judgment.

### 3.   Plaintiffs are Entitled to Post-Judgment Interest

Plaintiffs request post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

### 4.   Plaintiffs Are Entitled to a Permanent Injunction

The Copyright Act allows courts to grant permanent injunctions "to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an irreparable injury; (2) that there is no adequate remedy at law; (3) that the balance of hardship between the plaintiff and defendant warrants equitable relief; and (4) that it is in the public's interest to issue the injunction. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

### (a)   The Factors for a Permanent Injunction Are Satisfied

*First*, Defendants' infringements have irreparably harmed Plaintiffs by undermining the value of the Copyrighted Works, damaging Plaintiffs' standing in

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the marketplace, interfering with Plaintiffs' relationships and goodwill with licensees, and threatening customer confusion regarding the value of legitimate streaming services. Compl. ¶¶ 8, 10, 31, 75, 86, 96; Willett Decl. ¶¶ 19, 27–28.

Further, where Defendants have "failed to provide any assurances that [they] will stop the [infringement]," a permanent injunction is warranted. *Daimler AG v. A-Z Wheels LLC*, 498 F. Supp. 3d 1282, 1294 (S.D. Cal. 2020). Based on DeBarr's past recidivism, there is a significant threat of future infringement. Willett Decl. ¶ 26. "[T]he entire purpose of an injunction is to take away defendant's discretion not to obey the law." *Canadian Lumber Trade All. v. United States*, 441 F. Supp. 2d 1259, 1266 (Ct. Int'l Trade 2006), *aff'd*, 517 F.3d 1319 (Fed. Cir. 2008). While Outer Limits currently appears to be offline, an injunction provides assurance, backed by the Court's contempt power, that Defendants will not relaunch Outer Limits or another infringing service.

*Second*, a monetary award would neither protect Plaintiffs from future infringement nor adequately compensate them for the harm Defendants have caused. Those harms include Plaintiffs losing control over the Copyrighted Works, damage to their business goodwill, and harm to the continued advancement of the legitimate online market for distribution of creative works. Willett Decl. ¶ 24; *Universal City Studios Prods. LLLP v. TickBox TV LLC*, 2018 WL 1568698, at *13 (C.D. Cal. Jan. 30, 2018) (similar harms supported inadequate remedy at law). Moreover, the fact that DeBarr will not defend himself in this lawsuit is consistent with the fact he likely would not satisfy any damages award to Plaintiffs. Under these circumstances, a monetary remedy is insufficient. *See*, *e.g.*, *Grokster*, 518 F. Supp. 2d at 1219 ("Damages are no remedy at all if they cannot be collected…."); *Lava Records, LLC v. Ates*, Civ. A-05-1314, 2006 WL 1914166, at *3 (W.D. La. July 11, 2006) (awarding permanent injunction because of "the need to prevent irreparable harm to Plaintiffs, which will not be remedied by a damage award that may or may not be collectible").

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Third*, the balance of hardships favors Plaintiffs. Any "harm" to Defendants is the result of their illegal conduct, which "does not merit significant equitable protection." *VidAngel*, 869 F.3d at 867. In contrast, absent a permanent injunction, Plaintiffs will face the ongoing threat of continuing, irreparable harm from DeBarr resuming his infringing activity.

*Fourth*, "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures." *VidAngel*, 869 F.3d at 867.

Plaintiffs respectfully request that the Court enter the proposed permanent injunction against Defendants, which prevents Defendants from engaging in further infringement and requires the transfer of the Infringing Domains to Plaintiffs.

### (b)   The Court Should Issue the Relief in the Proposed Order

Plaintiffs' proposed injunction has two components: (1) enjoining Defendants from infringing Plaintiffs' copyrights and from aiding and abetting others in such infringement (Proposed Order ¶¶ A–E); and (2) ordering service providers who are in active participation with Defendants and who receive actual notice of the order to transfer the domains associated with the Infringing Domains, or any other domain associated with the operation of the Infringing Service, and cease providing services to the Infringing Domains or other domains (Proposed Order ¶¶ F–G).

Consistent with Federal Rule of Civil Procedure 65(d)(2), the permanent injunction may cover the named Defendants and their "officers, agents, servants, employees, and attorneys, and [*all others*] *in active concert or participation with* [*them*]" who receive "*actual notice*" of the order. Fed. R. Civ. P. 65(d)(2) (emphasis added). Courts properly include language in orders indicating that injunctive relief applies to individuals acting in concert with the named defendants, as Plaintiffs request here. *See*, *e.g.*, *Caridi*, 346 F. Supp. 2d at 1075 (granting permanent injunction in copyright infringement case in accordance with Rule 65(d)(2)).

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27ᵀᴴ FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

To prevent further infringement of their copyrighted works, Plaintiffs request an order requiring that the respective registries and registrars for the Infringing Domains transfer such domains, and any additional domains associated with the Infringing Service, to Plaintiffs or cause them to be relisted with a registrar selected by Plaintiffs. Proposed Order ¶ F. Courts routinely order the transfer of domains associated with infringing activities. *See Warner Bros. Entm't, Inc. v. Vega*, 2012 WL 13008442, at *5 (C.D. Cal. Mar. 29, 2012) (directing transfer of domains to plaintiff "[i]n order to give practical effect to the Permanent Injunction" enjoining copyright infringement); *Gucci Am., Inc. v. Huoqing*, 2011 WL 31191, at *14 (N.D. Cal. Jan. 3, 2011) (ordering transfer of 28 domains through which defendants sold counterfeit goods), *report & recommendation adopted by* 2011 WL 30972 (N.D. Cal. Jan. 5, 2011); *see also Simple Design Ltd. v. Enerjoy Ltd.*, 710 F. Supp. 3d 817, 828 (C.D. Cal. 2024) (permanent injunction directed platforms to remove defendants' infringing app).

Plaintiffs similarly seek an order directing the hosting providers of the Infringing Domains, and of any domain names found to be associated with Defendants' operation of the Infringing Service, who receive notice of the order, to suspend services to such domains and to prevent the domains' content from being transferred to another domain name or hosting service. Proposed Order ¶ H. This is consistent with relief courts have issued in similar cases. *See, e.g.*, *Sas v. Sawabeh Info. Servs. Co.*, 2012 WL 12886442, at *13 (C.D. Cal. Apr. 6, 2012) (enjoining service providers from "operating or hosting" infringing websites); *Fornix Holdings LLC v. Unknown Party*, 2023 WL 6295014, at *3 (D. Ariz. Sept. 27, 2023) (ordering hosting provider to suspend services to infringing website and to place administrative lock on website to prevent transfer of content); *Amazon Content Servs.[,] LLC v. Kiss Libr.*, 2020 WL 12863507, at *3 (W.D. Wash. Aug. 27, 2020) (enjoining "third parties providing services" to infringing websites); *Otter Prods., LLC v. Anke Grp. Indus. Ltd.*, 2013 WL 5910882, at *4 (D. Nev. Jan. 8, 2013)

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

(ordering web hosting companies and other service providers who receive notice of injunction to remove counterfeit and infringing products from defendant's website or alternatively disable access to website).

## V.   CONCLUSION

Plaintiffs respectfully request that the Court enter default judgment against Defendants as set forth in the concurrently filed proposed judgment and injunction.

*I certify that this memorandum contains 6,999 words, in compliance with L.R. 11-6.1.*

DATED: July 3, 2025

DAVIS WRIGHT TREMAINE LLP
SCOTT R. COMMERSON
SEAN M. SULLIVAN
KATELYN A. FELICIANO
L. DANIELLE TOALTOAN

By: _____*/s/ Scott Commerson*_____
Scott R. Commerson

Attorneys for Plaintiffs

PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899