SCOTT R. COMMERSON (State Bar No. 227460)
  scottcommerson@dwt.com
SEAN M. SULLIVAN (State Bar No. 229104)
  seansullivan@dwt.com
KATELYN A. FELICIANO (State Bar No. 350385)
  katelynfeliciano@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

L. DANIELLE TOALTOAN (NY Bar No. 5074315), *pro hac vice*
  danielletoaltoan@dwt.com
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Telephone: (212) 489-8230
Fax: (212) 489-8340

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZON CONTENT SERVICES LLC; APPLE VIDEO PROGRAMMING LLC; COLUMBIA PICTURES INDUSTRIES, INC.; DISNEY ENTERPRISES, INC.; NETFLIX US, LLC; PARAMOUNT PICTURES CORPORATION; UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP; UNIVERSAL CITY STUDIOS LLC; and WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiff, <br><br> vs. <br><br> ZACHARY ADAM-LAYNE DEBARR; ILOCKSPORTS LLC; and Does 1-10 d/b/a outerlimitsiptv.com and outerlimitshosting.net, <br><br> Defendants. | Case No. **5:25-cv-00685-JLS (DTBx)** <br><br> **DECLARATION OF BRYAN WILLETT IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS** <br><br> Date:   August 8, 2025 <br> Time:   10:30 AM <br> Dept.:   Courtroom 8A <br><br> Assigned to the Hon. Josephine L. Staton <br><br> Action Filed: March 4, 2025 |

I, Bryan Willett, declare and state as follows:

1.    I am Vice President, Content Protection (Americas Region) at the Motion Picture Association, Inc. ("MPA"), where I have worked since October 2024. I have worked in the field of investigations and enforcement for over 20 years. Prior to joining the MPA, I was employed at the Federal Bureau of Investigation (FBI) for two decades, most recently as Supervisory Special Agent and Cyber Task Force Leader. In this role, I managed a team of cyber professionals and oversaw the development of the Los Angeles Cyber program strategy, which included multiple investigative teams and the alignment of personnel dedicated to addressing theft of intellectual property, data extortion, ransomware, and fraud.

2.    I submit this declaration in support of the Motion for Default Judgment and Permanent Injunction Against Defendants ("Motion") submitted by Amazon Content Services LLC, Apple Video Programming LLC, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Netflix US, LLC, Paramount Pictures Corporation, Universal City Studios Productions LLLP, Universal City Studios LLC, and Warner Bros. Entertainment Inc. (collectively, "Plaintiffs").

3.    Except as otherwise noted, the contents of this declaration are based on my personal knowledge and the results of the investigation conducted by the MPA. If called as a witness to this action, I could and would testify completely to the contents of this declaration.

### Introduction

4.    The MPA is the not-for-profit trade association that supports the motion picture, television, and streaming industry. The MPA contributes to the work of initiatives such as the Alliance for Creativity and Entertainment ("ACE"), which is a global coalition of leading stakeholders in the streaming and online distribution ecosystem. ACE is committed to protecting the growing legal market for the dissemination of creative content and addressing the challenges of online piracy. ACE members include Plaintiffs, as well as other legitimate streaming

1

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

services, creators, broadcasters, and other companies contributing to the legitimate digital content marketplace.

5.    The MPA's Content Protection team is responsible, among other work, for investigating infringement of ACE members' copyrights (including Plaintiffs') and working with counsel and law enforcement to halt and remedy such violations. Based on my work, I have extensive knowledge regarding the technology that enables online infringement, including circumvention and decryption tools, website and file hosting and operation, streaming content delivery systems, marketing, communications, payment processing, and other functions that support or are related to online infringement. I also have experience with methods of identifying individuals and entities responsible for online infringement. Through my work, I am also aware of the business model of the entertainment industry and how copyright infringement threatens the lawful motion picture and television production and distribution ecosystem.

6.    In this declaration, I describe the MPA's investigation of Defendant Zachary Adam-Layne DeBarr ("DeBarr"), and his company, iLockSports LLC ("iLockSports") (together with DeBarr, "Defendants") and his infringing service Outer Limits IPTV ("Outer Limits" or "Infringing Service"), as well as the impact of piracy on ACE members such as Plaintiffs.

### *Outer Limits*

7.    Outer Limits provides internet protocol television ("IPTV"). IPTV is a method for transmitting content over the internet rather than other content-delivery methods, such as cable, satellite, or "over the air" transmission. Outer Limits streamed thousands of channels that featured television programs, motion pictures, and sports programs.

8.    I understand that the copyrights to many of the works that the Infringing Service transmitted are owned or controlled by Plaintiffs or their affiliates, including the copyrighted works listed in Exhibit A to the Complaint filed

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

in this action (the "Copyrighted Works").

9.      As detailed in the Complaint (¶¶ 4–8, 36–37, 46–56), the Infringing Service provided access to this content through third-party IPTV media players directly downloaded to Defendants' subscribers' mobile devices, computers, and smart TVs.

10.     DeBarr (and through his company, iLockSports) operated the Infringing Service through two web domains: outerlimitsiptv.com and outerlimitshosting.net (together, "Infringing Domains").

11.     Members of the MPA Content Protection team subscribed to and tested Outer Limits. The team also investigated and reviewed information available on the internet, including social media, related websites, and online discussion channels that provided additional information regarding Defendants' operations.

12.     MPA's Content Protection team used the Infringing Service to search for and locate all of the titles identified in Exhibit A to the Complaint. The Infringing Service has streamed each of the identified Copyrighted Works and many other works owned or controlled by Plaintiffs. I understand that Plaintiffs have not authorized Defendants to exploit their works, including without limitation the Copyrighted Works listed in Exhibit A to the Complaint. In addition to the Copyrighted Works, MPA's investigation revealed that Outer Limits' subscribers had access to thousands of other copyrighted works, each of which could be streamed an unlimited number of times.

13.     ACE sent DeBarr a cease-and desist notice letter on Plaintiffs' behalf in September 2020 demanding that he cease operating Outer Limits. Counsel for Plaintiffs followed up with DeBarr several times in late 2020 and early 2021, via phone calls and correspondence. During these communications, Plaintiffs' counsel repeatedly conveyed to DeBarr that he was engaged in mass infringement of Plaintiffs' works and demanded that he cease his infringement.

14.     Plaintiffs were unable to reach a resolution with DeBarr. In November

3

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT
JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

2020, while the parties' discussions were continuing, the Infringing Service went temporarily offline. MPA's investigators later discovered that DeBarr had relaunched Outer Limits by August 2021 and continued to operate the Infringing Service.

15. After the filing of this lawsuit, the MPA's Content Protection team continued to monitor the Infringing Domains and the Infringing Service, which were still active at the time Plaintiffs brought this lawsuit. Shortly after Defendants received notice of the lawsuit, the Infringing Domains went offline. As of the date of this declaration, the Infringing Domains appear to either have been deactivated, or at minimum, are no longer accessible in the U.S. The Infringing Service also appears to be offline or inaccessible to subscribers. It is believed that DeBarr continues to control the Infringing Domains and therefore could reactivate the Infringing Service at any time, just as he did in August 2021.

### *Plaintiffs' Business Models*

16. Plaintiffs and their affiliates are well-known entertainment companies engaged in, among other things, the production and distribution of audiovisual content, including motion pictures and television shows. Plaintiffs and their affiliates produce and distribute a significant portion of the world's most popular movies and television shows.

17. Plaintiffs invest substantial resources to bring their copyrighted works to consumers. Each motion picture and television series project entails substantial risk. The upfront costs of producing, marketing, and distributing a major motion picture frequently are in the tens and even hundreds of millions of dollars. Similarly, for Plaintiffs' television programs, producing, marketing, and distributing a television series requires a multi-million dollar investment. Plaintiffs' ability and willingness to incur this type of risk depends on their ability to earn a return on their investments by receiving remuneration for the exercise of Plaintiffs' exclusive rights, including the rights to distribute, reproduce, and publicly perform their

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT
JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

copyrighted works.

18.    Plaintiffs' ability to exercise and/or license to third parties their exclusive rights as copyright owners is the linchpin of their businesses. Plaintiffs authorize the legitimate distribution, reproduction, and public performance of their works in various formats and through multiple distribution channels, by way of example:

    a.    through over the air broadcast television, cable, and direct-to-home satellite services that transmit live and pre-programmed television channels on a fixed schedule ("Linear TV");

    b.    through legitimate internet or over-the-top streaming services such as Hulu Live TV, YouTube TV, Sling TV, and others, that offer Linear TV over the internet in a format similar to that traditionally offered by cable and direct-to-home satellite services;

    c.    through licensed internet video-on-demand ("VOD") services, including those operated by Amazon, Apple TV, Netflix, Disney+, Hulu, and HBO Max;

    d.    for private home viewing on DVD, Blu-ray, and on digital copies; and

    e.    through exhibition in theaters.

19.    Plaintiffs' relationships with authorized distributors in these channels are the subject of heavily negotiated and complex agreements that provide benefits to both Plaintiffs and the licensed distributors. Plaintiffs' contractual relationships with its distributors require the investment of significant time and resources.

20.    The agreements governing the right to use Plaintiffs' copyrighted works contain multiple provisions that specify the particular circumstances under which the copyrighted works may be publicly performed or otherwise used, including *how* (under what conditions), *when* (on what date and for what duration),

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT
JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES. CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*where* (in which geographic locations), for *what* (which titles), and for *how much* (at what price) those licensed distributors have rights to the copyrighted works.

21.    Plaintiffs' business models depend on their ability to tailor their agreements and licenses to ensure they can maximize the value they receive from the authorized dissemination of their works. The value of Plaintiffs' copyrighted works to its distribution licensees is critically contingent upon Plaintiffs' ability to offer exclusivity during certain periods and in certain territories.

### The Impact of Defendants' Infringement on Plaintiffs

22.    DeBarr does not have a license from any of the Plaintiffs to stream the Copyrighted Works. He pays nothing for the rights he exploits. The subscription fees he collects from end users serve only to enrich him and not to compensate the legitimate participants in content creation and distribution—including copyright owners, like Plaintiffs, whose investments created the entertainment that DeBarr's customers consumed. DeBarr's unauthorized streaming of content has caused, and will continue to cause, Plaintiffs this very direct and fundamental harm.

23.    Lost compensation, however, is only part of the harm that Defendants cause Plaintiffs. Defendants' unauthorized streaming poses an even more serious threat to the cornerstone of Plaintiffs' business: the ability to control *who* performs their Copyrighted Works and therefore maintain the exclusive control over the dissemination of those Works and on what terms. Depriving copyright owners of their basic right to control the exercise of their exclusive rights undermines the economic structure of the entertainment industry.

24.    Defendants threaten a variety of serious and irreparable harms to Plaintiffs including: (a) threatening streaming businesses, which in turn, harms Plaintiffs and their relationship with authorized distributors; (b) increasing the demand for infringing content by accustoming consumers to low-cost, infringing services; and (c) hampering Plaintiffs' anti-piracy efforts and exposing them to the risk of further piracy.

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES. CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

25.    Plaintiffs' losses from Defendants' infringing conduct cannot be calculated with precision because, among other things, the Copyrighted Works represent only a fraction of the total number of Plaintiffs' works that were accessible on the Infringing Service.

26.    While it appears the Infringing Service is no longer operational, based on my experience investigating copyright infringers, DeBarr is very likely to engage in infringing conduct again, especially given his long history of piracy. Plaintiffs must continue to monitor Defendants' activities. There is no indication that the registrars for the Infringing Domains have removed the registration for the Infringing Domains or otherwise transferred ownership of them; nor is there any indication that the hosting service providers have ceased hosting the Infringing Domains.

27.    If Defendants rebrand or offer new illicit streaming services, Plaintiffs will continue to suffer irreparable harm and will be forced to seek enforcement action again.

28.    Based on my experience in and understanding of the industry, I believe the harms to Plaintiffs from Defendants' infringing activities are irreparable.

EXECUTED this 2nd day of July, 2025, at Los Angeles, California.

_____
BRYAN WILLETT

DECL. OF BRYAN WILLETT ISO PLAINTIFFS' FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899